**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennie Marie Wright, ) | No. CIV 11-036-TUC-GEE |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Michael J. Astrue, Commissioner of ) Social Security, ) | |
| Defendant. ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(b). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73.

The final decision of the Commissioner denying benefits to the claimant, Jennie Marie Wright, is not supported by substantial evidence and free from legal error. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The case will be remanded for payment of benefits.

PROCEDURAL HISTORY

On May 23, 2007, Wright filed an application for disability insurance benefits and supplemental security income. (Tr. 135-47; 154) She alleged disability beginning on June 1, 2005, due to "COPD, lower back problems, depression, anxiety; arthritis; high blood pressure

and high cholesterol." (Tr. 158) Her claim was denied initially (Tr. 47-54) and upon reconsideration. (Tr. 56-62) Wright requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum on February 2, 2009. (Tr. 13) A supplemental hearing was held on November 4, 2009. (Tr. 13) In his decision, dated December 1, 2009, the ALJ found Wright was not disabled. (Tr. 13-24)

Wright appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Wright subsequently filed this action appealing the Commissioner's final decision. (Doc. 1); *see* 20 C.F.R. § 422.210(a). She filed her opening brief on November 14, 2011. (Doc. 23). The Commissioner filed a responsive brief on January 13, 2012. (Doc. 26)

Claimant's Work History and Medical History

Between 1999 and 2005, Wright worked primarily as a telephone customer service representative. (Tr. 159, 165) She stated: "I was let go because I was unable to sit for long periods of time and take calls and just, you know, stay on [sic] the one position and just keep taking calls and calls and calls and calls and calls." (Tr. 611) Wright alleged disability beginning on June 1, 2005, due to "COPD, lower back problems, depression, anxiety[,] arthritis[,] high blood pressure[,] and high cholesterol." (Tr. 158); (Tr. 611)

In September of 2007, Christopher Maloney, M.D., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment. (Tr. 355) He found Wright could lift and/or carry 20 pounds occasionally and 10 pounds frequently. (Tr. 356) She could stand and/or walk for at least 2 hours and sit for about 6 hours in an 8-hour work day. (Tr. 356) She should never climb ladders, ropes, or scaffolds. (Tr. 357) She could crawl occasionally. (Tr. 357) She should avoid concentrated exposure to fumes, odors, dusts, and gasses and hazards such as machinery and heights. (Tr. 359)

In September of 2007, Eugene Campbell, Ph.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 367) He documented (1) Affective Disorders (depression) and (2) Substance Addiction Disorders (meth. dependence, in reported

remission). (Tr. 367, 370, 375)  He found mild limitation in the areas "Activities of Daily Living" and "Maintaining Social Functioning." (Tr. 377)  He found moderate limitation in "Maintaining Concentration, Persistence or Pace." (Tr. 377)

Campbell also completed a Mental Residual Functional Capacity Assessment. (Tr. 363) He found moderate limitation in Wright's: "ability to maintain attention and concentration for extended periods," "ability to complete a normal workday and workweek . . . and to perform at a consistent pace," and "ability to interact appropriately with the general public." (Tr. 364)

In January of 2008, Robert Estes, M.D., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment. (Tr. 406-413) Estes documented a primary diagnosis of "Lumbar deg[enerative] disc disease / Obesity." (Tr. 406) He documented a secondary diagnosis of "Chronic sinusitis / HBP / high cholesterol." (Tr. 406) Estes opined Wright could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 407) She could stand and/or walk for 6 hours and sit for 6 hours in an 8-hour work day. (Tr. 407) She should never climb ladders, ropes, or scaffolds and should only occasionally climb ramps or stairs, crouch, or crawl. (Tr. 408)  She should avoid even moderate exposure to hazards such as machinery or heights, and similarly avoid fumes, odors, dusts, gases, and poor ventilation. (Tr. 410)

The record contains notes from Wright's treating physician, Dung T. Nguyen, D.O., beginning in 2005 and continuing to August of 2008. (Tr. 243-293, 555-590) Nguyen describes Wright's "Active Problems" as "Allergic Rhinitis, Chronic Obstructive Pulmonary Disease, Chronic Pain Syndrome, Depression, Essential Hypertension, Herniated Disc (L5-S1), Hoarseness, Hyperlipidemia, Obesity, [and] Smoking Cigarettes." (Tr. 555)

In January of 2009, Nguyen completed a Physical Residual Functional Capacity Assessment. (Tr. 423) Nguyen opined Wright could stand, sit, or walk for less than two hours in an 8-hour work day. *Id.* She could lift and carry less than 10 lbs. *Id.* Her ability to bend, climb, squat, or use her upper extremities was markedly limited. *Id.*

In May of 2009, Wright was examined by Richard Petronella, M.D. for the state Disability Determination Services. (Tr. 592) Petronella's impression was (1) "Chronic low back pain with lumbar degenerative disk disease and morbid obesity," and (2) "Chronic

- 3 -

1  obstructive pulmonary disease with chronic history of smoking." (Tr. 594) Wright reported
2  getting "some relief taking [the analgesics] Morphine Sulfate CR 100 mg twice a day in addition
3  to Propoxyphene n 100/apap 650 mg tablets twice a day." (Tr. 592)

4  Petronella opined Wright could occasionally lift and carry up to 20 lbs. (Tr. 595) She
5  could sit for 6 hours and stand for 2 hours in an 8-hour work day. (Tr. 596) She could walk for
6  10 minutes at a time and for less than 30 minutes per day. (Tr. 596) She should never climb
7  ladders or scaffolds, kneel, or crawl. (Tr. 598) She should never work around dust, odors,
8  fumes, or other pulmonary irritants. (Tr. 599) She should never work at unprotected heights or
9  around moving mechanical parts. (Tr. 599) Petronella further found Wright could not "walk
10 a block at a reasonable pace on rough or uneven surfaces." (Tr. 600)

11 On February 2, 2009, Wright appeared with counsel at a hearing before ALJ Peter Baum.
12 (Tr. 607) At the time of the hearing, Wright was 34 years old and had completed a GED. (Tr.
13 610-11, 620)

14 Wright testified that in 2005 she was doing mail order catalog customer service work.
15 (Tr. 611) She was fired because back pain prevented her from sitting for long periods of time
16 taking customer service calls. (Tr. 611-12). She tried working at a Quik Mart, but she was fired
17 after two months because she was unable to cope with the physical demands of the job. (Tr.
18 612)

19 She occasionally drives her children to school, but she does not volunteer because of her
20 back pain. (Tr. 614) Sometimes she goes grocery shopping, but she does not go alone because
21 she cannot lift more than 10 pounds. (Tr. 616) She sometimes prepares meals and sometimes
22 does the dishes afterwards. (Tr. 617)

23 Because of her emphysema, she has difficulty walking up a flight of stairs or walking a
24 block down the road. (Tr. 617)

25 Wright explained she used methamphetamine in 2005, but she stopped when her children
26 were taken away and she received substance abuse treatment. (Tr. 618)

27 The vocational expert, Ruth van Vleet, testified that a person with the mental limitations
28 described by Eugene Campbell and the physical limitations described by Robert Estes could not

1  return to work as a customer service representative. (Tr. 621-22) Such a person could,
2  however, work at approximately 50% of the assembler production jobs. (Tr. 622) There are
3  approximately 500,000 of these jobs nationally and 300 in Arizona. (Tr. 623)

4  On November 4, 2009, Wright appeared with counsel at a supplemental hearing before
5  ALJ Peter Baum. (Tr. 31) The vocational expert, Ms. McAlpin, testified that a person with the
6  physical limitations described by Petronella in his report written in May of 2009 could work in
7  sedentary customer service jobs. (Tr. 37-38) The ALJ conceded that Wright would be disabled
8  if Nguyen's opinion of Wright's physical limitations was adopted. (Tr. 38-39)

10  CLAIM EVALUATION

11  Social Security Administration (SSA) regulations require that disability claims be
12  evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter*
13  *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of
14  whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4),
15  416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

16  If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two
17  which requires a determination of whether the claimant has a "medically severe impairment or
18  combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a
19  determination at step two, the ALJ uses medical evidence to consider whether the claimant's
20  impairment more than minimally limits or restricts his or her "physical or mental ability to do
21  basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is
22  denied. *Id*.

23  Upon a finding of severity, the ALJ proceeds to step three which requires a determination
24  of whether the impairment meets or equals one of several listed impairments that the
25  Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R.
26  §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's
27  impairment meets or equals one of the listed impairments, then the claimant is presumed to be
28  disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir.

1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1 exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
2 *Id.* at 1341.

3       If the claimant has both exertional and non-exertional limitations, the ALJ must consult
4 the grids first before considering the testimony of a vocational expert at step five. *Lounsburry*
5 *v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). If the grids direct a finding of disability, that
6 finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

8       <u>The ALJ's Findings</u>

9       At step one of the disability analysis, the ALJ found Wright "has not engaged in
10 substantial gainful activity since June 1, 2005, the alleged onset date . . . ." (Tr. 15). At step
11 two, he found Wright "has the following severe impairments: depression; anxiety; degenerative
12 disc disease of the lumbar spine; obesity; COPD; hypertension . . . ." (Tr. 15). At step three,
13 the ALJ found Wright's impairments did not meet or equal the criteria for any impairment found
14 in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 16).

15       The ALJ then analyzed Wright's residual functional capacity (RFC). (Tr. 18). He found
16 Wright "has the residual functional capacity to perform light work . . . except the claimant is
17 precluded from climbing ladders, ropes and scaffolds, and may only occasionally climb ramps,
18 stairs, crouch or crawl." (Tr. 18). The ALJ further found Wright is moderately limited in her
19 ability to maintain attention and concentration, moderately limited in her ability to work with
20 persistence and pace, and moderately limited in her ability to interact appropriately with the
21 public. (Tr. 18)

22       At step four, the ALJ found Wright was unable to perform past relevant work. (Tr. 22).
23 At step five, the ALJ found, using the testimony of the vocational expert, that Wright could
24 work as an assembler / production worker for which there exist 500,000 jobs in the national
25 economy and 300 jobs in Arizona. (Tr. 23).

27       <u>STANDARD OF REVIEW</u>

1 An individual is entitled to disability benefits if he or she demonstrates, through 2 medically acceptable clinical or laboratory standards, an inability to engage in substantial 3 gainful activity due to a physical or mental impairment that can be expected to last for a 4 continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] 5 claimant will be found disabled only if the impairment is so severe that, considering age, 6 education, and work experience, that person cannot engage in any other kind of substantial 7 gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 8 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

9 The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 10 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is 11 not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). 12 Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept 13 as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a 14 preponderance." *Id.*.

15 "Where evidence is susceptible to more than one rational interpretation, the ALJ's 16 decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider 17 the entire record as a whole and may not affirm simply by isolating a specific quantum of 18 supporting evidence." *Id.*

19 In evaluating evidence to determine whether a claimant is disabled, the opinion of a 20 treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 21 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he 22 sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 23 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner 24 may reject that opinion only if he provides specific and legitimate reasons supported by 25 substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between 26 a medical opinion as to a physical condition and a medical opinion on the ultimate issue of 27 disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

28

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Wright argues, among other things, that the ALJ improperly discounted the opinion of her treating physician, Dung T. Nguyen, D.O., and instead adopted the contrary opinions of the non-examining physicians, Eugene Campbell, Ph.D. and Robert Estes, M.D. (Tr. 363-380), (Tr. 406-413); see (Tr. 20-21)  Nguyen is a treating physician, and his opinion should trump the opinion of a non-examining physician unless the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (applying the "specific and legitimate" test). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

- 9 -

making findings." *Orn*, 495 F.3d at 632. "The ALJ must do more than offer his conclusions." *Id*. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

If the treating source's opinion "is well-supported by medically andacceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(d)(2); § 416.927(d)(2). If the treating source's opinion is not given controlling weight, the ALJ must nevertheless analyze other factors such as the length, nature, and extent of the treating relationship; the supportability and consistency of the opinion; and the degree of medical specialization possessed by the treating source. 20 C.F.R. § 1527(d)(2 - 6); § 416.927(d)(2- 6); *see also Sameena, Inc. v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("[A] federal agency is obliged to abide by the regulations it promulgates."). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996) In sum, the ALJ must "give good reasons" for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2); § 416.927(d)(2).

In this case, the ALJ offered the following assessment of the treating physician's opinion:

> The undersigned gives no weight to the opinion of Dung Nguyen, [D.O.], . . . because his opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques and his medical opinion is inconsistent with the other substantial evidence in the claimant's record. The claimant's alleged limitations are not supported by the objective medical evidence of record or by the claimant's reported activities of daily living.

(Tr. 21) This assessment, however, does little more than quote the regulation and offer a conclusory assertion that Nguyen's opinion is not entitled to controlling weight. The ALJ did not specifically explain why Nguyen's opinion "is not well supported by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 404.1527(d)(2); § 416.927(d)(2). He did not identify what evidence in the record is inconsistent with Nguyen's opinion. Neither did he identify what aspects of Wright's "reported activities of daily living" fail to support Nguyen's opinion. *See* (Tr. 21) In sum, the ALJ did not "give good reasons" for

- 10 -

according the opinion of the treating source no weight. *See* 20 C.F.R. § 404.1527(d)(2); § 416.927(d)(2). The ALJ's decision is not supported by substantial evidence and free from legal error. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The court does not reach Wright's alternate allegations of error.

The Commissioner argues that evidence in the record supports the ALJ's conclusions. He suggests that Nguyen's January 2009 opinion is contradicted by evidence that "Plaintiff had good range of motion, normal strength and reflexes, negative straight leg raising tests." (Doc. 26, p. 19) He notes that, on occasion, Wright "denied complaints of joint pain, muscle atrophy, muscle pain, or weakness." *Id*. These records, he argues, show that Nguyen's opinion lacks supportability and consistency with the record as a whole. *Id*. Unfortunately, the ALJ did not make these arguments in his decision, and therefore this court may not consider them. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *see also Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . .").

The ALJ failed to give specific and legitimate reasons for crediting the opinion of the state agency non-examining physician over the opinion of Wright's examining physician, Dung T. Nguyen, D.O. Accordingly, Nguyen's opinions should be credited as a matter of law. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law.").

"Where we conclude that a claimant's testimony or a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir. 1999); *see also Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding the treating physician's opinion). In this case, the ALJ improperly discounted the opinion of Wright's treating

- 11 -

physician. Crediting this opinion leads necessarily to a finding of disability.[2] *See* (Tr. 39); (Doc. 23, p. 12)

There are no outstanding issues to be resolved. Remand of the case would serve no useful purpose. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."). A finding of disability should be entered. *See also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 21st day of March, 2012.

_____
Glenda E. Edmonds
United States Magistrate Judge

---

[2] At the supplemental hearing, the ALJ conceded that Wright would be disabled if Nguyen's RFC opinion were adopted. (Tr. 38-39)

- 12 -